[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this action, the plaintiff seeks damages for defamation and breach of hospital by-laws. The defendants have filed a counterclaim alleging vexatious litigation. The defendants Charlotte Hungerford Hospital (CHH) and Alan Bier move for summary judgment on counts one, two and three. In this motion the defendants argue that they are entitled to summary judgment because the Health Care Quality Improvement Act (HCQIA) provides them immunity and because the alleged defamatory statements were true. In addition, the defendant Alan Bier argues that General Statutes § 52-597
bars the claim against him and General Statutes § 19a-17b provides him immunity.
Summary judgment must be granted it if the pleadings, affidavits, and other documentary proof show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 17-49; Appleton v. Board ofEducation, 254 Conn. 205, 209 (2000); Community Action for GreaterMiddlesex County, Inc. v. American Alliance Ins. Co., 254 Conn. 387, 397
(2000); Miles v. Foley, 253 Conn. 381, 385 (2000). A "material" fact is one which will make a difference in the outcome of the case. Morasciniv. Commissioner of Public Safety, 236 Conn. 781, 808 (1996). In ruling upon a summary judgment motion, the court merely determines whether an issue of fact exists, but does not try the issue if it does exist.Michaud v. Gurney, 168 Conn. 431, 433 (1975).
The purpose of summary judgment is to eliminate the delay and expense accompanying a trial where there is no real issue to be tried. Wilson v.New Haven, 213 Conn. 277, 279 (1989); Mac's Cary City, Inc. v. AmericanNational Bank, 205 Conn. 255, 261 (1987). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Sherwood v. Danbury Hospital,252 Conn. 193, 201 (2000).
"Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . [the nonmovant] must substantiate its adverse claim by showing that there is a genuine issue of material fact together with . . . evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court. . . ." (Internal quotation marks omitted.) Home Ins. Co. v. AetnaCT Page 4674Life Casualty Co., 235 Conn. 185, 202 (1995).
Turning first to the single count addressed to Alan Bier, count two, the court grants the defendant's motion for the following reasons. The factual allegation as to Bier's conduct reads,
 7. Thereafter, the defendant Alan Bier, M.D., vice president of medical affairs for the defendant hospital, falsely and recklessly told the Ethics, Privileges and Credentials Committee of the defendant hospital that the plaintiff relinquished all his ureteroscopic privileges, that the plaintiff had reapplied for such privileges, and that the plaintiff had no additional training in that field.
Amended Complaint dated June 12, 2001, Count 2, ¶ 7.
This alleged conduct occurred during the credentialing process and, therefore, prior to the defendant CHH's decision not to reinstate the plaintiff's privileges on April 22, 1998. (Affidavit of Alan Bier, M.D., November 28, 2001 [Bier Affidavit], Ex.9; Affidavit of Richard Munch, February 5, 2002 [Munch Affidavit], Ex. C.
Under General Statutes § 52-597, no action sounding in libel or slander "shall be brought but within two years from the date of the act complained of" This action was initiated on July 13, 2000, more than two years after April 22, 1998. Significantly, the plaintiff neither addresses count two in his argument nor does he raise any issue of fact relating to the defendants' motion on this ground in his affidavit. Accordingly, the court finds that there is no genuine issue as to a material fact that General Statutes § 52-597 bars the second count.
As to the remaining counts, the following facts are not in dispute. The plaintiff Richard Munch is a urologist who for many years prior to July 1997 had admitting privileges at CHH. On or about July 2, 1997, the plaintiff sent the chief of surgery of CHH a letter which contained the following language pertinent to this motion:
 I am writing this letter following preliminary review of the ureteroscopy study to voluntarily reduce my privileges in this area.
On reviewing the ureteroscopy study it is apparent to me that my urologic colleagues, Dr. Schettler and Dr. Devanney, are more fascicle in doing ureteroscopys, this to a degree that I believe my CT Page 4675 patients would best be served by referral to these men for elective cases. I would like to preserve the ability to do this procedure in emergencies or not as a primary procedure. My training in ureteroscopy is through continuing medical education seminars on this subject the last one I completed only two months ago.
(Affidavit of Edward Osborn, M.D., November 26, 2001 [Osborn Affidavit], Ex.1.) From July 1997 through October 1997, the plaintiff and defendant Bier corresponded regarding the plaintiff's clinical practice at CHH and the completeness and accuracy of the ureteroscopy study referred to in the plaintiff's July 2, 1997 letter.
On February 20, 1998, the plaintiff wrote again to the chief of surgery regarding his ureteroscopy privileges. In that letter, the plaintiff requested a "clarification of [his] ureteroscopy privileges." (Osborn Affidavit, Ex.2; Munch Affidavit, Ex.B.) He specifically requested that he "be permitted to do ureteroscopy." Id. Referring to the ureteroscopy study as incomplete, the letter also stated that he would refer more complicated procedures to colleagues and that he would do "straight forward cases." Id. Finally, the plaintiff stated that if this request was not accepted, a hearing committee be appointed to review his privileges. Id. On February 23, 1998, defendant Bier wrote a letter to the plaintiff informing him that the plaintiff's February 20, 1998 letter would be considered a request for reinstatement of privileges. (Bier Affidavit, Ex.7.) In that letter and one dated March 10, 1998, the defendant Bier informed the plaintiff that, unless he withdrew his request for ureteroscopy privileges, the credentialing process would continue. (Bier Affidavit, Ex.7, Ex.8.)
On April 22, 1998, the chairman of the Patient Care Conference Committee wrote to the plaintiff denying a reinstatement of his privileges and informing him of his right to request a hearing pursuant to the bylaws. (Bier Affidavit, Ex.9.) On May 13, 1998, the plaintiff requested a hearing "on the reduction of [his] ureteroscopy privileges." (Affidavit of Michael Kovalchik, November 30, 2001 [Kovalchik Affidavit], Ex.2.) On June 22, 1998, the plaintiff canceled the request for a hearing. (Kovalchik Affidavit, Ex.3.) On July 6, 1998 the defendant CHH reported its denial of the plaintiff's reinstatement of privileges to the National Practitioner Data Bank ("Data Bank".). (Munch Affidavit, Ex.E.) On July 14, 1998, the plaintiff renewed his request for a hearing on his "ureteroscopy privilege reduction." (Kovalchik Affidavit, Ex.4.) Although the July 14, 1998 request was beyond the thirty day time period under the hospital bylaws, the president of the medical staff wrote the plaintiff advising him that his untimely request would be considered. CT Page 4676 (Kovalchik Affidavit, Ex.5.) On February 10, 1999, CHH's attorney sent the plaintiff a letter requesting that he advise the defendant no later than March 12, 1999, if he wished to proceed with a hearing. (Affidavit of Michael Eisner, November 28, 2001 [Eisner Affidavit], Ex.1.) The plaintiff did not respond, and no hearing was held. (Eisner Affidavit, ¶ 14.)
In count one, the plaintiff alleges that by the reporting the denial of the plaintiff's reinstatement of privileges to the Data Bank, the defendant CHH defamed the plaintiff. Specifically, the plaintiff alleges that the adverse action report stating "Denial Privileges: Incompetence/malpractice/negligence;" contained claims that were totally false. (Amended Complaint, ¶ 14.) The defendants argue in their motion that this report cannot be the basis of the defamation claim because 1) CHH is immune from liability under the Health Care Quality Improvement Act (HCQIA), 42 U.S.C. § 11101 et seq., and 2) because the report was true.
Through the HCQIA of 1986, Congress provided a statutory scheme to "provide incentive and protection for physicians engaging in effective professional peer review." 42 U.S.C. § 11101 (5). The explicit intent behind the Act was to address the national needs "to improve the quality of medical care . . ., to restrict the ability of incompetent physicians to move from state to state without disclosure or discovery of the physician's previous damaging or incompetent performance."42 U.S.C. § 11101 (1)(2). In effecting these goals, Congress included providing immunity to the professional review body taking professional review action.
Under the statutory definition, and in this action, CHH is a professional review body. 42 U.S.C. § 11151 (11)[1]. Nor is there any dispute that the adverse action report by the CHH was a professional review action as defined in 42 U.S.C. § 11151 (9)[2]. The immunity from liability would apply to CHH for its adverse action report as to the plaintiff if the action was taken under the following conditions:
 (1) in the reasonable belief that the action was in the furtherance of quality health care,
(2) after reasonable effort to obtain the facts of the matter,
(3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and CT Page 4677
 (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3). A professional review action shall be presumed to have met the preceding standards necessary for the protection set out in section 411(a) [42 USCS § 11111(a)] unless the presumption is rebutted by a preponderance of the evidence.
(Emphasis added.) 42 U.S.C. § 11112.
There is considerable federal case law interpreting this statutory immunity in the context of a summary judgment. The defendants have presented a thorough and accurate summary of those cases as well as out of state authority. There is no Connecticut precedent. Under the federal precedent, the non-movant plaintiff must produce sufficient evidence that would allow a jury to conclude by a preponderance of the evidence that the defendant CHH had not met the standards of the HCQIA in its credentialing process. See Brader v. Allegheny General Hospital,167 F.3d 832, 839 (3rd Cir. 1999); Bryan v. James E. Holmes RegionalMedical Center, 33 F.3d 1318, 1333-34 (11th Cir. 1994), cert. denied,514 U.S. 1019 (1995). In other words, the role of this court is not to substitute its judgment for that of the professional review body nor to reweigh the evidence before that body, but simply to determine whether a genuine issue of fact exists as to the hospital's compliance with HCQIA's conditions for immunity.
In his objection to the motion and through his affidavit, the plaintiff argues first, that in order to receive immunity the defendants must, but have not, established the truth of the adverse action report; second, that because the defendants failed to offer the plaintiff a hearing prior to terminating his privileges, there is no immunity, and finally that the CHH was not required to send a report to the Data Bank since all the plaintiff sought was a "clarification" of his ureteroscopy privileges rather than a reapplication.
The court has reviewed the affidavits in support of the motion, along with the exhibits, which were correspondence between the parties, and has reviewed the plaintiff's counter affidavit. Based upon the applicable procedural and substantive law, the court determines that there exists no genuine issue as to any material fact that CHH complied with the conditions set forth in the HCQIA to be entitled to immunity. Notwithstanding the plaintiff's position, the truth of the report does not enter into this determination. Reviewing the letters it is clear that CT Page 4678 after the plaintiff voluntarily reduced his privileges and notified CHH, a process unfolded, that, in the absence of any evidence in rebuttal, met the standards set forth in 42 U.S.C. § 11112. The plaintiff did not produce evidence sufficient to rebut the presumption that CHH reasonably believed its action was in the furtherance of quality care, that it made reasonable effort to obtain the facts and provided notice and hearing or other fair procedures to the plaintiff The plaintiff clearly sought a reinstatement of the privileges he voluntarily surrendered; upon notification that the reinstatement was denied he was offered a hearing prior to the adverse action report being sent to the Data Bank.
 The intent of the [HCQIA] was not to disturb, but to reinforce, the preexisting reluctance of courts to substitute their judgment on the merits for that of health care professionals and of the governing bodies of hospitals in an area within their expertise.
Brader v. Allegheny General Hospital, supra, 167 F.3d 843.
For these reasons, the court finds for the defendant CHH on count one pursuant to the immunity granted to it under the HCQIA.[3]
The third count of the complaint seeks damages for breach of the hospital bylaws. The plaintiff specifically contends that on April 22, 1998 when CHH terminated his ureteroscopy privileges without providing him a hearing, it violated § 2, Paragraph G of Article VIII of the bylaws of the Medical Staff The defendant CHH argues that there is no genuine issue as to any material fact that it did not breach its bylaws in denying the plaintiff's request to reinstate his voluntarily relinquished privileges. It notified the plaintiff and offered him a hearing before sending the report to the Data Bank. (Bier Affidavit, Ex.9.) The court agrees that there is no issue of fact as to the plaintiff's breach of bylaws count. The defendant CHH followed its bylaws as to procedure following a voluntary reduction in privileges. Further, for the reasons stated in the discussion as to count one the immunity provisions of the HCQIA bar this count.
The motion for summary judgment is granted. Judgment may enter for the defendants on each count of the complaint.
____________________ DiPentima, J.